**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 99-40632

_____


PETER VEECK, doing business as RegionalWeb,

Plaintiff-Counter Defendant-Appellant,

versus


SOUTHERN BUILDING CODE CONGRESS INTERNATIONAL INC.,

Defendant-Counter Claimant-Appellee.


_____

Appeals from the United States District Court
for the Eastern District of Texas

_____
February 2, 2001

Before WIENER and STEWART, Circuit Judges, and LITTLE, District
Judge.[*]

WIENER, Circuit Judge:

Plaintiff-Appellant Peter Veeck ("Veeck") appeals from a
summary judgment of the district court holding that he infringed
the copyright of Defendant-Appellee Southern Building Code Congress
International ("SBCCI") when he posted SBCCI's copyrighted model

---

[*] Chief Judge F.A. Little, Jr. of the Western District of
Louisiana, sitting by designation.

codes on the Internet without SBCCI's permission. Agreeing with the district court, we affirm.

## I.

### FACTS AND PROCEEDINGS

SBCCI is a nonprofit organization that develops, promotes, and promulgates model building codes, such as the Standard Plumbing Code, the Standard Gas Code, the Standard Fire Prevention Code, and the Standard Mechanical Code. SBCCI encourages local governments to enact its codes into law by reference, without cost to the governmental entity. In each of its codes, SBCCI asserts a copyright under which it claims the exclusive right to publish these codes or license their reproduction and publication. Once a governmental unit enacts such a code into law, copies are to be made available for inspection by the public in the enacting government's offices. Members of the public may make or obtain copies of portions of the SBCCI codes from city offices or local libraries or may purchase copies of the codes directly from SBCCI and from some bookstores as well. Although SBCCI is a nonprofit organization, it uses revenue from sales of its model codes to fund its continuing activities. Non-members are charged more for copies of SBCCI's model codes than are members of the organization. For example, members are charged $48 for a copy of SBCCI's 1994 standard building code, for which nonmembers are charged $72.

2

Veeck operates a nonprofit web site, known as RegionalWeb, which provides information about North Texas, including texts of local building codes. Several towns in North Texas have adopted SBCCI's codes, including the towns of Anna and Savoy. Veeck attempted to obtain a copy of the building codes of his hometown of Denison, Texas, after learning that Denison had adopted SBCCI's model code as its own. Failing to locate Denison's building code at local bookstores or libraries, Veeck ordered from SBCCI copies of its codes in electronic format.[1] According to Veeck, he later visited approximately twenty towns in North Texas, including Anna and Savoy, in an effort to obtain copies of their local building codes, not all of which had been produced by SBCCI. Veeck was not able to buy complete copies at any of the cities he visited.[2] He apparently never attempted to view or copy the SBCCI codes in any city clerk's or other municipal office.

The package containing the computer disks that SBCCI sent to Veeck included a software license agreement and copyright notice.

---

[1] The record is not completely clear, but it appears that Veeck did not attempt to view or copy the codes in the Denison city clerk's office. When Veeck received the 1994 codes from SBCCI, he realized that Denison had adopted the 1988 version of the building codes. He posted the 1994 codes on his Internet site despite the fact that they were not the exact version adopted by Denison.

[2] Some of the cities apparently did not have the correct version of their building code available at alternative locations. For instance, Sherman, Texas, had adopted the 1997 version of the building code, but the local library had only the 1994 version on hand.

In disregard of these data, Veeck installed the codes on his personal computer and, by "cutting and pasting," was able to put the entire codes on his web site. Veeck's web site did not specify that the codes were written by SBCCI, instead simply identifying them as the building codes of Anna and Savoy, Texas.

When it learned that Veeck had posted copies of its codes on his web site, SBCCI sent him a cease and desist order, accusing him of infringing its copyrights. Veeck responded by filing this declaratory judgment action in an effort to have the district court rule that he did not violate the Copyright Act. SBCCI counterclaimed, asserting five counts of copyright infringement, as well as unfair competition and breach of contract. Both parties moved for summary judgment on the copyright infringement issue.

In the absence of genuinely disputed material facts, the district court granted summary judgment in favor of SBCCI, holding that it held valid, enforceable copyrights and rejecting Veeck's defenses of fair use, copyright misuse, waiver, merger, and due process. The district court found five separate instances of copyright infringement — one for each separate model code that Veeck published on his web site — and granted a permanent injunction and monetary damages to SBCCI. Veeck appealed.[3]

---

[3] Appellate amicus briefs were filed in support of SBCCI by the American Medical Association, American National Standards Institute, American Society of Association Executives, American Society of Heating, Refrigerating and Air Conditioning Engineers, National Fire Protection Association, Texas Municipal League, and Underwriters Laboratories, Inc. Briefs in support of Veeck were

## II.

## ANALYSIS

A.  Standard of Review

This case is on appeal from a grant of summary judgment, dismissing Veeck's declaratory judgment action and granting SBCCI's requested copyright infringement relief.  We therefore review the record de novo, applying the same standard as the district court.[4] A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[5]  A fact issue is material if its resolution could affect the outcome of the action.[6] A dispute about a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.[7]  In deciding whether such an issue has been created, we must view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party —— here, Veeck.[8]

---

filed by Professor Malla Pollack and the Association of American Physicians & Surgeons.

[4]  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[5]  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[6]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[7]  Id.

[8]  Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

The standard for summary judgment mirrors that for judgment as a matter of law.[9]  Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[10]  In its review, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.[11]

B.  Copyright Infringement

The core purpose of copyright law is "to secure a fair return for an author's creative labor" and thereby "to stimulate artistic creativity for the general public good."[12]  To establish copyright infringement, the plaintiff must prove a valid copyright and copying by the defendant of constituent elements of the work that are original.[13]  Here, there is no question that SBCCI holds valid copyrights to the building codes and that Veeck copied the codes by

---

[9]  Celotex, 477 U.S. at 323.

[10]  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 2102 (2000).

[11]  Id. at 2110.

[12]  Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975) (internal quotations omitted).

[13]  Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see also Lakedreams v. Taylor, 932 F.2d 1103, 1107-08 (5th Cir. 1991).

placing them on the Internet.  Veeck seeks to circumvent SBCCI's

copyright protection, however, under various doctrines that serve

as defenses to copyright infringement or otherwise limit copyright

holders' exclusive use of their creations.

Veeck contends that once SBCCI's model codes are enacted into

public law they lose their copyright protection under principles of

due process, freedom of speech, and the affirmative defenses of

merger, misuse, waiver, and fair use that are peculiar to copyright

law.  The instant case is one of first impression in this circuit,

but three other circuit courts have examined the issue of

enforcement of copyrights in the context of privately developed

codes or compilations that had been enacted, in some form, into

public law.[14]  Although the First Circuit expressed serious doubt

---

[14]   See Practice Mgt. Info. Corp. v. American Med. Ass'n
("Practice Management"), 121 F.3d 516 (9th Cir. 1997), cert.
denied, 522 U.S. 933 (1997), opinion amended by 133 F.3d 1140 (9th
Cir. 1998) (finding that the American Medical Association did not
lose the right to enforce its copyright when use of its promulgated
coding system was required by government regulations); CCC Info.
Servs. v. Maclean Hunter Mkt. Reports, Inc. ("CCC"), 44 F.3d 61 (2d
Cir. 1994), cert. denied, 516 U.S. 817 (1995) (upholding copyright
of privately prepared listing of automobile values that states
required insurance companies to use); Building Officials and Code
Adm. v. Code Tech., Inc. ("BOCA"), 628 F.2d 730, 736 (1st Cir.
1980) (declining to invalidate copyright of building code created
by nonprofit group and adopted by the state, but simultaneously
expressing doubt over the enforceability of the copyright given
that the state had adopted the code); see also 1 Melville B. Nimmer
& David Nimmer, Nimmer on Copyright § 5.06[C], at 5-91 (2000) ("It
is questionable whether [the due process clause] justifies the
denial of copyright to a private person or group who produces such
a model code.").

that a privately authored building code adopted by the state of Massachusetts could be distinguished from uncopyrightable statutes and judicial opinions,[15] neither that court nor the other two circuit courts that have subsequently addressed the issue have held that codes lose their copyright protection when used or adopted by a state or local government. We decline to create a circuit split by reaching the opposite conclusion today.[16]

C. Defenses

1. Due Process/Public Domain

According to Veeck, the public's due process interest in free access to the building codes extinguishes SBCCI's copyright because the codes enter the public domain when they are enacted into law. At the outset, we note that although Veeck struggles mightily to raise a fact issue as to whether he was denied access to the codes, we agree with the district court that there is no probative evidence that the codes are not publicly available in North Texas towns. Leaving aside the issues of the codes' availability in bookstores, public libraries, and directly from SBCCI, we shall assume that due process requires at a minimum that the codes should

---

[15]    See BOCA, 628 F.2d at 735-36.

[16]    See supra note 13; see also David S. Levitt, Copyright Protection for United States Government Computer Programs, 40 IDEA 225, 238 (2000) (citing cases "support[ing] the proposition that privately developed and properly copyrighted material should remain copyrighted material unless the material falls into the strict definition of statute or judicial opinion").

be available for inspection and copying at the city offices in towns where they have been adopted by reference.  Veeck has fallen short in his efforts to raise a genuine fact issue regarding such availability of the codes in Anna and Savoy.[17]

Inasmuch as there are no facts showing that Veeck was actually prevented or substantially hindered from viewing the public law, Veeck's claim poses the legal question whether a private entity that develops a code may maintain copyright in it once that code is adopted in globo as law.  Not all reproductions of copyrighted work are "within the exclusive domain of the copyright owner; some are

_____

[17] Had Veeck shown denial of access, we almost certainly would find that a material fact issue precluded summary judgment.  The record shows, however, that Veeck has not raised a genuine question as to whether he or anyone else was denied access to the codes at any such city office.  His unavailability claims center on Anna and Savoy, Texas, two extremely small communities with fewer than 1,000 residents apiece.  When Veeck visited Savoy's city hall, he was told that the building codes were at the public works department, information he did not pursue.  In Anna, after finding the city clerk twice absent, he made no further effort to view the codes.  In his own affidavit, Veeck indicates that the codes may be publicly available in both towns, stating that "the codes are only available at the Anna and Savoy city halls during those times when city officials are available."  Veeck simply has not succeeded at raising any genuine due process issue other than the fact that a tiny community occasionally may be forced by staff absence to close the doors to its city hall — hardly a constitutional violation.
    Furthermore, had Veeck in fact been unable to obtain a copy of the enacted building codes because of SBCCI's copyright, we would likely conclude that due process provides grounds to invalidate such copyright.  See Practice Management, 121 F.3d at 519.  Given that Veeck was not precluded from viewing copies of the enacted codes, however, further legal analysis is needed.

in the public domain."[18]  Due process requires that the public have notice of what the law is so that the people may comply with its mandates.[19]  Thus the question is whether, once adopted into law, SBCCI's codes fall outside its exclusive domain and into the public domain by virtue of the requirements of due process.[20]

The First Circuit aptly described the quandary that we face today when it explained that even though the law is well established that "judicial opinions and statutes are in the public domain and are not subject to copyright," the question remains "whether this principle likewise covers state-promulgated administrative regulations which are modelled on a privately developed code that was copyrighted by the service-oriented organization responsible for its creation and updating."[21]  In other words,

> The rule denying copyright to judicial opinions and legislative enactments was completely settled by the end of the nineteenth century.  With the emergence of the regulatory state in the twentieth century, and the

---

[18]  Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 433 (1984).

[19]  See BOCA, 628 F.2d at 734.

[20]  The parties do not question the notion that the codes would not be copyrightable if they had been developed by public officials.  See, e.g., Banks v. Manchester, 128 U.S. 244, 253 (1888) (holding judicial opinions uncopyrightable because they are created by judges paid from the public's coffers); Wheaton v. Peters, 33 U.S. 591, 668 (1834) (same).

[21]  BOCA, 628 F.2d at 734 (footnote omitted).

10

proliferation of administrative regulations, two new questions arose for copyright policy: Should copyright attach to texts that, though prepared privately, have received the imprimatur of official action? Should copyright attach to regulatory codes that, although drafted by private industry groups, have subsequently been enacted into law?[22]

The second question is the one we must answer today.

More than 100 years ago, in <u>Banks v. Manchester</u>,[23] the Supreme Court held that a private reporter of the state's judicial opinions who desired to protect his compilation could not assert copyright for that purpose. The court rested this determination on two grounds. First, judicial opinions are not subject to copyright because they are publicly owned by virtue of the fact that the judges who render them are paid with public funds.[24] Second, as a matter of public policy, judge's opinions are not subject to copyright because the public interest is served by free access to the law.[25]

The Court's first ground is not applicable here: Unlike <u>Banks</u>, in this case SBCCI is asserting a viable proprietary interest because it created the model codes using its own, private

---

[22]  1 Paul Goldstein, <u>Copyright</u> § 2.5.2 (2d ed. 1996 & Supp. 1999), at 2:47.

[23]  128 U.S. 244 (1888).

[24]  <u>See</u> <u>id.</u> at 253.

[25]  <u>See</u> <u>id.</u>; <u>see also</u> <u>Practice Management</u>, 121 F.3d at 518 (interpreting <u>Banks</u>).

11

resources. Nonetheless, the public policy concern announced in Banks remains vexatious. There, the Court declined to enforce the state reporter's copyright in judicial opinions because "[t]he whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all. . . ."[26] This point would seem to apply equally to any statute, ordinance, or regulation that has the force of law irrespective of authorship. But extrapolating broad generalities from such a narrow holding is risky.

The Second Circuit addressed this public policy argument in CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.[27] That case involved a copyright infringement counterclaim brought by Maclean, the publisher of the "Red Book" projections of used car valuations, against CCC, a competitor that copied Maclean's valuations into a computer database for sale to customers. CCC's database also contained the average of each vehicle's valuations in (1) the Red Book and (2) the NADA Official Used Car Guide (known as the "Bluebook"), the other leading used car valuation book. A separate market exists for the Red

---

[26] Banks, 128 U.S. at 253; see also BOCA, 628 F.2d at 734–35 (expressing doubt that a private entity that developed a building code was entitled to enforce copyright after the code was enacted into public law on the bases that (1) the public owns the law and pays the salary of those who draft legislation, and (2) the "right of the public to know the law to which it is subject").

[27] 44 F.3d 61 (2d Cir. 1994).

Book/Bluebook average "because the laws of certain states use that average figure as a minimum for insurance payments upon the 'total loss' of a vehicle."[28] The trial court granted summary judgment for CCC based in part on the legal conclusion that the Red Book fell into the public domain when it was incorporated into governmental regulations.[29]

The Second Circuit reversed and granted summary judgment for Maclean. The appellate court found it necessary to "balance the conflicts and contradictions that pervade the law of copyright, and the need, where elements of the copyright law conflict, to determine, <u>as a policy judgment</u>, which of its commands prevails over the other."[30] In the instant case, as in <u>CCC</u>, a policy judgment is indispensable to our balancing of the public interests in, on the one hand, encouraging innovation through copyright and, on the other hand, ensuring free access to the law.

We do not dismiss lightly the policy considerations supporting Veeck's position; yet, limited to the narrow set of facts before us, we perceive the scale of countervailing policy considerations to be tipped in favor of enforcing SBCCI's copyright.[31] We

---

[28]  <u>Id.</u> at 64.

[29]  <u>Id.</u>

[30]  <u>Id.</u> at 68 (emphasis added).

[31]  <u>See</u> <u>id.</u> at 74 ("We are not prepared to hold that a state's reference to a copyrighted work as a legal standard for valuation results in loss of the copyright.").

reiterate for emphasis that no court has held to the contrary.[32] We are further comforted in reaching this balancing result by the agreement of the leading treatise on the subject that to strip a copyright owner of his rights when his work is adopted by a state legislature would "prove destructive of the copyright interest in encouraging creativity in connection with the increasing trend toward state and federal adoptions of model codes."[33]

The Second Circuit analogized the claims it rejected in CCC to a hypothetical holding that schoolbooks lose their copyright once assigned in compliance with a school curriculum mandated by law.[34] We believe that if code writing groups like SBCCI lose their incentives to craft and update model codes and thus cease to publish, the foreseeable outcome is that state and local governments would have to fill the void directly, resulting in increased governmental costs[35] as well as loss of the consistency

---

[32]    The First Circuit noted in BOCA that it was "far from persuaded that [plaintiff's] virtual authorship of the Massachusetts building code entitles it to enforce a copyright monopoly over when, where, and how the Massachusetts building code is to be reproduced and made publicly available," but declined to rule on the ultimate merit of the case. BOCA, 628 F.2d at 735.

[33]    1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 5.06[C], at 5-92 (2000).

[34]    CCC, 44 F.3d at 74.

[35]    See 63 Fed. Reg. 8545, 8554-55 (Feb. 19, 1998) (Office of Management and Budget Notice of Final Revision of Circular A-119) (directing federal agencies to adopt privately developed standards "whenever practicable and appropriate" to "eliminate[] the cost to the Government of developing its own standards"); National

and quality to which standard codes aspire.  A second glance at the names of the amici supporting SBCCI's position in this case[36] provides an idea of the potential sweep of a contrary holding that the authors of model codes could not enforce copyrights in their works once the ultimate reason for their very creation is realized. As amici state in their brief supporting SBCCI, "these codes and standards are widely used and adopted by local and state government and federal authorities throughout the United States who do not otherwise have the necessary facilities and resources to develop these safety standards independently."

Each of the three states comprising this circuit has statutes that refer to standards promulgated by SBCCI.[37]  Examples of other private codes referenced in the statutes of Texas, Louisiana, and Mississippi are: (1) manufactured home standards adopted and published by the American National Standards Institute;[38] (2) the

---

Technology Transfer and Advancement Act of 1995, Pub. L. No. 104-113, § 12(d), 110 Stat. 775, 783 (1996).

[36]  American Medical Association; American National Standards Institute; American Society of Association Executives; American Society of Heating, Refrigerating and Air-Conditioning Engineers; American Society of Mechanical Engineers; National Fire Protection Association, Inc.; Texas Municipal League; and Underwriters Laboratories Inc.

[37]  See, e.g., Tex. Loc. Gov't § 235.002(c)(1) (Vernon 1999) (fire code); La. Rev. Stat. Ann. § 40:1722(B)(3) (West 2000) (building code); Miss. Code. Ann. § 45-11-73 (2000) (building code).

[38]  La. Rev. Stat. Ann. § 51:911.23 (West 2000).

Uniform Plumbing Code and the National Standard Plumbing Code;[39] and (3) the codes of the National Board of Fire Underwriters, the National Fire Protection Association, and the American Society for Mechanical Engineers.[40] As the Ninth Circuit recently wrote when it declined to find that the American Medical Association's copyright of its medical procedure code ("the CPT") became unenforceable after a federal agency adopted it for use on Medicaid claim forms,

> invalidating [the AMA's] copyright on the ground that the CPT entered the public domain when [the Health Care Financing Administration] required its use would expose copyrights on a wide range of privately authored model codes, standards, and reference works to invalidation. Nonprofit organizations that develop these model codes and standards warn they will be unable to continue to do so if the codes and standards enter the public domain when adopted by a public agency.[41]

In State of Texas v. West Publ'g Co.,[42] we could discern no due process violation in the absence of evidence that anyone was actually being denied access to the law. In the instant case, the district court likewise was presented with no evidence that Veeck or others had been denied access vel non to the codes in question; thus, there was no genuine issue of material fact on Veeck's due process claim. Neither does this case involve a citizen barred

---

[39] Tex. Rev. Civ. Stat. Ann. art. 6243-101, § 3 (Vernon 2000).

[40] Tex. Nat. Res. Code Ann. § 113.052 (Vernon 2000).

[41] Practice Management, 121 F.3d at 519 (footnotes omitted).

[42] 882 F.2d 171, 177 (5th Cir. 1989).

16

from photocopying applicable portions of municipal codes; on the contrary, Veeck ordered the SBCCI standardized codes directly from SBCCI and published those expressly copyrighted works on the Internet. Because under these facts we conclude as a matter of law that the codes here at issue had not entered the public domain, Veeck's act of copying infringed SBCCI's copyrights, and no due process or other policy concern excuses that infringement.

2. Merger

In his merger argument, Veeck contends that SBCCI's building codes, once enacted by reference into law, became a <u>fact</u> which can be <u>expressed</u> in only one way.[43] He argues, unsupported by precedent, that the adoption of SBCCI's code into law was a transformative event that instantly denuded the work of copyright protection. In other words, according to Veeck, there can be only one expression of the law: Once adopted by the government, the model code merged into the body of the law. Therefore, concludes Veeck, there was no other correct way to express the building code law of, for example, Anna, Texas.

In this circuit, the merger doctrine has been applied to the question whether a work was copyrightable at the time of its

---

[43] The merger doctrine is based on 17 U.S.C.A. § 102(b), which states: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."

17

creation, preventing a copyright from attaching in the first place, rather than as an infringement defense focusing on merger at the time of copying.[44]  When we examine SBCCI's works <u>at the times of their creation</u> and ask whether at that instant they merged with the idea of "building codes," we conclude that the <u>expression</u> does not merge instantly with the <u>idea</u> because —— contrary to Veeck's insistence —— there remain many ways to write model building codes, not just one.[45]  As amici note, there are at least two other sets of building codes that currently compete with SBCCI's, namely, the National Codes published by Building Officials and Code Administrators International, and the Uniform Codes published by the International Conference of Building Officials.  As the Ninth Circuit held in rejecting a similar merger argument in <u>Practice Management</u>, the existence of SBCCI's copyright does not stifle independent creative expression by those who would seek to develop "comparative or better coding systems and lobby[ ] government[s] and private actors to adopt them.  It simply prevents wholesale

---

[44]  <u>Hodge E. Mason v. Montgomery Data, Inc.</u>, 967 F.2d 135, 138 n.5 (5th Cir. 1992) (citing <u>Kern River Gas Transmission Co. v. Coastal Corp.</u>, 899 F.2d 1458, 1460 (5th Cir. 1990)).

[45]  <u>See, e.g.</u>, <u>American Dental Ass'n v. Delta Dental Plans Ass'n</u>, 126 F.3d 977, 979 (7th Cir. 1997) (holding that dental association's taxonomy was original work of authorship entitled to copyright protection and stating that "[t]he Code's descriptions don't 'merge with the facts' any more than a scientific description of butterfly attributes is part of a butterfly").

copying of an existing system."[46]  Neither does the existence of SBCCI's copyrights prevent local governments from adopting codes that do not share SBCCI's unique expressive character or even the same requirements as those contained in its codes,[47] from adopting only parts of the model codes, or from changing them by ordinance.

Public policy also convinces us that application of the merger doctrine should be withheld here.  The purpose behind the concept of the merger of <u>expression</u> with <u>idea</u> is to ensure that copyright protection not extend to ideas.  The doctrine applies only when there are few or no other ways of expressing a particular idea.[48]  SBCCI's building codes are infused with the opinions of their authors, from the requirements chosen in the codes to their arrangement, level of detail, and grammatical style.  We have addressed the policy concerns raised by this case in determining that the building codes do not fall into the public domain once enacted into law.  The policy imbedded in the merger doctrine is limited to the separability of idea and expression and is not

---

[46]  <u>Practice Management</u>, 121 F.3d at 520 n.8.

[47]  <u>See</u> <u>American Dental Association</u>, 126 F.3d at 979-80.

[48]  <u>Kepner-Tregoe, Inc. v. Leadership Software, Inc.</u>, 12 F.3d 527, 533 (5th Cir. 1994) (explaining that "when an idea can be expressed in very few ways, copyright law does not protect that expression, because doing so would confer a de facto monopoly over the idea.  In such cases idea and expression are said to be merged.").

appropriately applied here.[49] Balancing copyright's competing goals and keeping firmly in mind the language of the Copyright Act, we conclude that merger is not a valid defense for Veeck.

3. Additional Defenses

a. Free Speech

Veeck raises four additional defenses on appeal.[50] As we turn to the first of these — his First Amendment defense — we emphasize that none contends that SBCCI attempted to use its copyright to block the public's access to the municipal codes of Anna and Savoy, Texas. In Schnapper v. Foley, the District of Columbia Circuit held that the First Amendment does not require the voiding of a copyright, even in a government-commissioned work, absent evidence that access to the work had been denied.[51]

---

[49] The global enactment of a code does make that code the law of the enacting municipality and hence, in one sense, a "fact." In the real world, however, as in this case, acknowledging this does not change our analytical approach. Individuals such as contractors who need to use building codes can — and do — quote applicable provisions or incorporate them by reference as needed, for instance, in preparing bids or setting project specifications. That type of use is not before us and cannot be equated to the facts here, involving the gratuitous publication of an entire code. The doctrine of the merger of expression and fact should not be applied to defeat SBCCI's copyright in this case.

[50] Another defense, implied license, was raised by amicus curiae Association of American Physicians & Surgeons, Inc., but was not addressed by either party in the district court or on appeal. Hence, we do not address it. See Christopher M. v. Corpus Christi Indep. Sch. Dist., 933 F.2d 1285, 1292 (5th Cir. 1991).

[51] 667 F.2d 102, 115-16 (D.C. Cir. 1981).

20

Veeck's Free Speech defense is further weakened by the fact that he did not first obtain copies of the codes of these two cities and then publish them on the Internet. Instead, Veeck purchased directly from SBCCI a copy of its 1994 Standard Codes, which arrived bearing a copyright notice and a license agreement. He nevertheless copied that set onto his computer and he posted it on the web, identifying it as containing the municipal codes of the two towns. These two possible courses of action are inherently different: The former is more akin to a citizen's fair use of his local building code;[52] the latter comprehends a purchaser who assumes the risk of actively disregarding the intellectual property rights held and announced by the supplier of a commercial product.

In enforcing its copyright in its model codes, SBCCI is not stifling access to or speech about the law. The First Amendment is not violated here.

b. Misuse

The equity-based defense of copyright misuse, which prevents a culpable plaintiff from prevailing in an action for the infringement of a misused copyright, "'forbids the use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office and which is contrary to public policy to grant.'"[53] In <u>Practice Management</u>, the Ninth Circuit

---

[52] Veeck's fair use defense is discussed further <u>infra</u>.

[53] <u>DSC Communications Corp. v. DGI Techs., Inc.</u>, 81 F.3d 597, 601 (5th Cir. 1996) (quoting <u>Lasercomb Am., Inc. v. Reynolds</u>, 911

found that the American Medical Association misused its copyright by licensing its coding system to the Health Care Financing Administration on the condition that the agency not use any competing system.[54] Veeck, in contrast, has raised no genuine issue of material fact regarding SBCCI's purported misuse of its copyright. The summary judgment record is devoid of evidence that the organization mandates the exclusive use of its codes or any of its other services when a governmental subdivision adopts one of the codes. There is thus no evidence of misuse that would prevent enforcement of SBCCI's copyright.

c.  Waiver

Neither can Veeck prevail on his assertion that SBCCI expressly or impliedly waived its right to copyright protection by encouraging municipalities to adopt its codes by reference.  A right such as copyright may be waived by inaction.[55] Copyright also may be waived as the result of a particular act, even if waiver was not the intended result.[56] Having concluded that SBCCI's codes are

_____

F.2d 970, 977 (4th Cir. 1990)).

[54]  Practice Management, 121 F.3d at 520.

[55]  See, e.g., Sherrod v. American Airlines, 132 F.3d 1112, 1119 n.5 (5th Cir. 1998).

[56]  See, e.g., Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 48 (5th Cir. 1995) ("Therefore, even if it be assumed that the ribbon flowers were copyrightable, the Littles through inadequate notice have made them part of the public domain, and Norma Ribbon was free to copy them.").

22

not in the public domain and that due process does not require suppression of SBCCI's copyright, we also conclude that the organization has done nothing to waive copyright protection.

SBCCI expressly reserved its copyright in the codes. The district court found undisputed the fact that the materials Veeck received from SBCCI "contained the copyright expressions of the Defendant." The district court also concluded that the fact that SBCCI had given North Carolina Building Inspectors Association permission to publish on the Internet that state's building codes, which are modeled on the SBCCI codes, does not amount to waiver. As the district court noted, "[c]ountless entities provide free access to materials on the Internet and still retain enforcement of their copyrights." SBCCI has not waived its copyright in its model codes.

d. Fair Use

Finally, Veeck argues that his posting of SBCCI=s copyrighted material on the Internet constituted a "fair use." Congress has excepted from infringement of copyrighted materials such specified uses as news reporting, teaching, and research.[57] Inferior courts are instructed by the Supreme Court to consider four factors in deciding whether a particular use of copyrighted material is a "fair use":

---

[57] See 17 U.S.C. § 107 (2000).

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.[58]

When, as with Veeck's activity here, the use of a copyrighted work is noncommercial, defeating a fair use defense requires "proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work."[59]

Even though the use to which Veeck put SBCCI's works is not harmful per se, it could severely undermine the market for those works if such use were to become widespread. Here, there is no genuine dispute, based on the summary judgment record, "that <u>some</u> meaningful likelihood of future harm exists."[60] This is not an instance of mere copying of the codes for personal use, or of Veeck's asking SBCCI for permission to post the codes on the web and being denied. Veeck's posting of the codes on the Internet could prove harmful by reducing SBCCI=s market and depriving it of income used in its socially valuable effort of confecting,

---

[58] <u>Id.</u>; <u>see also</u> <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 510 U.S. 569, 577 (1994).

[59] <u>Sony Corp. v. Universal City Studios</u>, 464 U.S. 417, 451 (1984).

[60] <u>Id.</u>

24

promulgating, and revising model codes. Having evaluated Veeck's copying under the four statutory factors, the potential harm prevents him from prevailing on a fair use defense.[60]

## D. SBCCI's Infringement Counterclaim

SBCCI holds valid copyrights in its codes, and Veeck has expressly admitted copying them. In the absence of a viable defense, the district court was correct in holding that SBCCI established copyright infringement. Under these circumstances, we are convinced that the district court's conclusions and its award of the minimum statutory damages on each of the five counts of copyright infringement are free of error.[61] Likewise, we find no abuse of discretion in the district court's award of attorneys' fees.[62]

---

[60] In Campbell v. Acuff-Rose Music, while evaluating a fair use defense, the Supreme Court discussed the degree to which a parodist's work transforms a copyrighted original. See 510 U.S. at 579. There, the parodist was the one making the transformation. In contrast, Veeck admits that he did nothing more than copy SBCCI's model codes verbatim; he did not transform them, through parody or otherwise. Therefore, Veeck's argument that the adoption by reference of SBCCI's codes by Anna and Savoy were "transformative" events does not find a home in Campbell.

[61] At the pertinent time, 17 U.S.C.A. § 504(c)(1) set the range of statutory damages for each act of copyright infringement at no less than $500 or more than $20,000. A 1999 amendment has raised those amounts to $750 and $30,000, respectively. Id.; Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, § 2(1), 113 Stat. 1774 (1999).

[62] Hogan Systems, Inc. v. Cybresource Int'l, Inc., 158 F.3d 319, 325 (5th Cir. 1998) (applying abuse of discretion standard of review to award of attorneys' fees in copyright case). Veeck did not brief the questions of the district court's grant of a

### III.

### CONCLUSION

Two decades ago, in <u>BOCA</u>,[63] the First Circuit wrestled with the serious issues raised by what was then only a "possible trend" toward state and federal adoption of model codes.[64] That court wisely left open for evaluation the modern realities surrounding technical regulatory codes. As the court wrote, groups that develop such model codes "serve an important public function; arguably they do a better job than could the state alone in seeing that complex yet essential regulations are drafted, kept up to date and made available."[65] The two circuit courts that subsequently addressed challenges similar to that considered by the First in <u>BOCA</u> also have declined to invalidate copyrights in works referenced under the law.[66]

In joining three of our sister circuits today, we emphasize that our holding is restricted to the narrow set of facts and circumstances before us. Under these, no one is being denied reasonable access to the SBCCI codes that have been adopted <u>in globo</u> by local governments; neither did Veeck's specific actions

---

permanent injunction or award of damages and attorneys' fees, and therefore waived them.

[63] 628 F.3d 730.

[64] <u>Id.</u> at 736.

[65] <u>Id.</u>

[66] See <u>Practice Management</u>, 628 F.3d 730; <u>CCC</u>, 44 F.3d 61.

make a sufficiently strong case for fair use. Even slightly different facts under different circumstances might produce a different result.

Today, the trend toward adoption of privately promulgated codes is widespread, and the social benefit from it is great. Our balancing of the countervailing policy concerns presented in this case ultimately leads us to conclude on these facts that copyright protection of privately authored model codes does not simply evanesce ipso facto when the codes are adopted by local governments; rather, they remain enforceable, even as to non-commercial copying, as long as the citizenry has reasonable access to such publications cum law. For these reasons, the judgment of the district court is, in all respects,

AFFIRMED.

LITTLE, District Judge, dissenting:

Today the majority concludes that the presumed benefits generated through the creation of "model codes" require that it strike the balance in favor of permitting the model code creator to continue to enforce its copyright, even after such a code has been adopted into law. In my view, once a "model code" is adopted into law by the government, a private entity, such as SBCCI, may no longer obstruct publication and transmission of the law by an uncompensated transferor. Adoption of the model code as law serves to place the law in the public domain and it should, therefore, be readily available for access by all citizens. The access should not be limited to a non-public commercial establishment. Similarly, upon enactment, the law transforms into an "idea" that is no longer distinguishable from its expression, causing SBCCI's codes to lose their copyright protection. It is my belief that reversal of the district court judgment is appropriate. I respectfully dissent from the decision of the majority.

### A.  Due Process/Public Domain Basis

The majority places great emphasis on the district court's conclusion that no probative evidence exists demonstrating that the codes are not publicly available in North Texas towns. This conclusion, even if factually accurate, is not determinative. The question, in my estimation, is not whether Veeck, or any other citizen, actually was prevented from viewing the public law, but whether a private entity that develops a code may maintain private control of that law through a copyright.

As the majority correctly observes, not all reproductions of copyrighted work are "within the exclusive domain of the copyright owner; some are in the public domain." Sony Corp. v. Universal

City Studios, Inc., 464 U.S. 417, 433, 104 S. Ct. 774, 784 (1984). It is well settled that judicial opinions and statutes are in the public domain and are not subject to copyright. As the Supreme Court enunciated in Banks, there exist two independent rationales for holding judicial opinions and statutes (and in my opinion, regulations), outside the realm of copyright. While I agree with the majority as to the inapplicability of the first, the "public funds rationale," I strenuously disagree with the majority's disregard of the second, the "public policy/due process" rationale. I also am unable to adopt a meaningful distinction between judicial opinions and statutes, and the regulations that have been promulgated and adopted into law as binding on the citizens of a given community. Today's holding creates a distinction that cannot be sustained.

In Banks, the Supreme Court declined to enforce the state reporter's copyright of judicial opinions because "[t]he whole work done by judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all." Banks, 128 U.S. at 253, 9 S. Ct. at 40; see also BOCA, 628 F.2d at 734-35 (expressing doubt that a private entity that developed a building code was entitled to enforce copyright after the code was enacted into public law on the basis that the public owns the law because it pays the salary of those who draft legislation and the public has the "right to know the law to which it is subject"). Here, SBCCI seeks to prevent an individual from posting, on an internet web site, a copy[1] of an enacted administrative regulation.

---

[1] The majority emphasizes that Veeck copied the regulation from a clearly marked, copyrighted edition of SBCCI's model code, rather than, presumably, going to the community in question, obtaining a copy of the regulation, and retyping or scanning that document onto his website. I do not view this as material. As Justice Harlan, sitting as a circuit justice, stated over one hundred years ago, "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book be the property of the state or the

The administrative regulation, primarily a building and zoning code, is binding on the public. Sanctions may follow noncompliance. Like a statute, a locality's building regulations are "the authentic exposition" of the law, which the Banks Court indicated should be "free for publication to all." Banks, 128 U.S. at 253, 9 S. Ct. at 40.

The First Circuit has indicated its approval of this reasoning in a case presenting facts similar to those we measure today. In BOCA, the plaintiff, Building Officials and Code Administration ("BOCA"), another code-writing organization, claimed copyright protection for its model building code, which it encouraged public authorities to adopt through a licensing program. See BOCA, 628 F.2d at 732. The Commonwealth of Massachusetts adopted and distributed a building code substantially similar to BOCA's model code, pursuant to a licensing agreement with BOCA. See id. Massachusetts then referred persons seeking to purchase a copy of the code to BOCA. See id. The defendant, Code Technology, Inc. ("CT"), a private publisher, published, and distributed its own edition of the Massachusetts building code. CT's edition was almost identical to BOCA's edition. See id. Relying on Banks and Wheaton, CT argued that because BOCA's code was adopted by the state as a set of administrative regulations having the force of law, it had lost its copyright protection and thus entered the public domain. See id. at 733. BOCA retorted that the building code differed

---

property of an individual." Howell v. Miller, 91 F. 129, 137 (6th Cir. 1898) (refusing to enjoin publication of a competing compilation of state statutes and noting that it would not matter if the defendant had "cut from [the plaintiff's] books the general laws of [the State]").

This case raises the issue of the defendant's conduct with regard to his posting the laws of Texas towns Anna and Savoy on his website (the majority's attention to the defendant's posting of the laws of Denison, Texas notwithstanding). My review of the record below indicates that both Anna and Savoy adopted the precise version of the "model code" posted by Veeck.

from judicial opinions and statutes because it was written by a privately funded entity and not by the government using public funds. See id.

Although the First Circuit declined to rule on the ultimate merit of the plaintiff's case, in vacating the district court's grant of a preliminary injunction to the copyright holder, it noted that it was "far from persuaded that [the plaintiff's] virtual authorship of the Massachusetts building code entitles it to enforce a copyright monopoly over when, where, and how the Massachusetts building code is to be reproduced and made publicly available." Id. at 735. The court reasoned that the public "owns the law" not just because it pays the salaries of those who write the statutes and judicial opinions, but because "[t]he citizens are the authors of the law." Id. at 734. The court also determined that due process guarantees access to the law because it requires notice of legal obligations. See id. It then expressed doubt that due process would allow a private entity to limit access under the copyright law, and to decide for itself when, where, and how the code was to be reproduced and made publicly available. See id. at 735. The court ultimately declined to decide the issue, however, remanding to the district court for further proceedings. See id. at 736.[2] Finding the BOCA analysis compelling, I conclude that a privately developed code is no longer entitled to copyright protection once it enters the public domain.

The majority contends that refusal to enforce SBCCI's copyright would result in a departure from the prior decisions of our sister circuits. On close inspection of those cases, it appears to me

---

[2] The First Circuit noted that "since the rule denying copyright protection to judicial opinions and statutes grew out of a much different set of circumstances than do these technical regulatory codes, we think BOCA should at least be allowed to argue its position fully on the basis of an evidentiary record." BOCA, 628 F.2d at 736.

31

that no other circuit has addressed a substantively similar situation to the one before us today. The result I favor would not, therefore, be in discord with the decisions of our sister circuits. Practice Management did not reject, outright, the viability of a public domain defense to copyright infringement. In that case, the Ninth Circuit declined to find that the "public domain" argument supported a publisher's attempt to produce its own copy of a medical coding system developed and copyrighted by the American Medical Association, that had been adopted by the federal Health Care Financing Administration for use in Medicare and Medicaid claim forms. See Practice Management, 121 F.3d at 517. I note that in Practice Management, the party challenging the copyright was a private entity seeking to "share in AMA's statutory monopoly." Id. at 519. Had the Ninth Circuit in Practice Management been faced with a situation similar to that presented here — where a private individual sought to publish gratuitously a public law for use by other citizens, rather than an instance where a private company sought to invalidate a copyright for its own commercial purposes — it may have decided differently.

It is also apparent that the Practice Management court was chary to apply the public domain rationale to defeat a copyright based on the concern that invalidating the AMA's copyright "would expose copyrights on a wide range of privately authored model codes, standards, and reference works to invalidation." Id. The Ninth Circuit warned that "'[t]o vitiate copyright, in such circumstances, could, without adequate justification, prove destructive to the copyright interest in encouraging creativity,' a matter of particular significance in this context because of 'the increasing trend toward state and federal adoptions of model codes.'" Id. at 518 (citing 1 Nimmer § 5.06[C], at 5-92 (1996)). Similarly, in CCC Information Services, the Second Circuit declined to employ the public domain concept to invalidate a copyright of a car valuation system that had been adopted into some states'

32

insurance codes. The CCC Information Services court based its ruling on a public policy-based concern for the ramifications to the copyright holder should the holder be forced to give up its copyright in every instance where the state adopted or referenced its work. See CCC Info. Servs., 44 F.3d at 73-74. Utter disregard of the majority's, as well as the Second and Ninth Circuits', expressed trepidation regarding the viability of standards-writing organizations is not lightly employed.[3] Neither the Second nor the Ninth Circuit, however, was presented with a situation where a private individual sought to publish the law for the sole purpose of sharing it with other citizens. The factual scenario brought before this court leads me to evaluate the public domain rationale in a light different from that utilized by these Circuits. When I balance the protection of original works versus the protection of the public's due process interest, I come down in favor of the public's ability to access the law without private constraints.

The extent of SBCCI's control over a regulation binding on the public further fortifies Veeck's assertion that a private entity should not be the sole gatekeeper to the public's laws despite the fact that here, copies were available to individuals at city hall or local libraries. The transformation of SBCCI's privately created work into a public law provides grounds to invalidate SBCCI's copyright to the extent that its code is enacted into law. Following along the lines of the

---

[3] This concern is not without merit. It is undisputed that SBCCI spends considerable time developing its codes, and thus provides a valuable service to local governments that choose to adopt the codes, either in whole or in part. The majority asserts, however, that a refusal to enforce SBCCI's copyright could result in a loss of incentive to create municipal codes. According to the majority, that loss would result in "increased governmental costs as well as the loss of the consistency and quality to which standard codes aspire." I disagree. SBCCI could charge a fair price to a city for code preparation, which a city could then compare to the cost of in-house preparation.

reasoning of the First Circuit in BOCA, I conclude that the due process concern for public access to the law forbids a private entity from exerting sole control over a public law through a copyright. Consequently, once enacted, the portions of SBCCI's codes that become law enter the public domain and are no longer entitled to copyright protection.

### B. Merger and the Idea/Expression Dichotomy

The reasoning implemented in the due process/public domain section of this dissent is sufficient to bolster reversal. Reversal could also be predicated on another, equally potent basis. Veeck has asserted that once adopted, SBCCI's codes become facts that are not protected under the Copyright Act. Further, because the exact language is critical to an enacted law's meaning, the "idea" embodied in the law merges with SBCCI's unique expression. In that case, the copyright becomes unavailing to its owner. SBCCI retorts that citizens are able to produce their own version of the information contained in the model codes and that it is only its particular expression that is protected by the Copyright Act. The district court rejected Veeck's merger argument, finding that the subject of building codes is open to multiple forms of expression. The majority has affirmed this conclusion.

As a preliminary matter, copyright protection is not extended to facts, procedures, processes, methods of operation, or information in the public domain. See 17 U.S.C. § 102(b); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. at 350, 111 S. Ct. at 1290; Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 547-48, 105 S. Ct. 2218, 2223-23, 85 L. Ed. 2d 588 (1985); Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 533 (5th Cir. 1994). Similarly, a copyright protects the expression of ideas, not the ideas themselves. See Kepner-Tregoe, 12 F.3d at 533. "[I]n order to protect the immunity of ideas from private ownership, when the expression is essential to

34

the statement of the idea, the expression also will be unprotected, so as to insure free public access to the discussion of the idea." CCC Info. Servs., 44 F.3d at 68. Where an idea is susceptible only to one form of expression, the merger doctrine applies and the expression will not be protected by the Copyright Act. See 17 U.S.C. § 102(b); Kepner-Tregoe, 12 F.3d at 533; Mason v. Montgomery Data, Inc., 967 F.2d 135, 138-40 (5th Cir. 1992). This "idea/expression dichotomy 'strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression.'" Harper & Row, 471 U.S. at 556, 105 S. Ct. at 2228 (citing, with approval, the Second Circuit's discussion of the copyright protection afforded to an idea versus its expression in Harper & Row Publishers, Inc. v. Nation Enters., 723 F.2d 195, 203 (2d Cir. 1983)). There is no bright-line test for determining whether an idea is distinguishable from its expression. The merger, or lack of it, should be determined based on the facts of the case. See Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280, 1285 (10th Cir. 1996). It is appropriate for the court to incorporate policy choices into its merger analysis, including the public's interest in free access to the law. See CCC Info. Servs., 44 F.3d at 68.

I agree with the majority that prior to adoption by local municipalities, SBCCI's model codes are entitled to copyright protection. Although no court has held decisively that the merger doctrine may be used to invalidate a copyright in a privately developed code that is enacted into law, there is merit to Veeck's argument that once enacted, the codes do become a fact or idea, in that there is only one accurate way to express an enacted law. The majority fails to explain how, once a model code is adopted as law, either in whole or in part, there exists any other way of expressing the law.[4] In

---

[4] While the majority acknowledges that "[t]he global enactment of a code does make that code the law of the enacting municipality and hence, in one sence, a 'fact,'" it steadfastly maintains that

35

CCC Information Services, the Second Circuit declined to invalidate the plaintiff's copyright interest in its Red Book car valuation that had been adopted into the state's insurance code, but explicitly acknowledged that the defendant's merger argument "is not easily rebutted." Id. at 68. The Second Circuit ultimately rejected the merger doctrine based on "the need, where elements of the copyright law conflict, to determine, as a policy judgment, which of its commands prevails over the other." Id. The court concluded that the fundamental principle of copyright law of granting authors exclusive rights to their writings outweighed the policy benefit of preserving public access to ideas. See id. at 68-72. Here, I conclude that the policy benefit of preserving unfettered public access to the law outweighs the interest of permitting the holder of a copyright in a "model code" to maintain that copyright subsequent to the code's adoption into law.

By its very nature, an enacted law enters the public realm as a concrete, definite fact/idea. There is only one accurate way to express a law. Courts consistently stress that, as a preliminary matter, the exact words of a statute govern its interpretation. See, e.g., Kennedy v. Texas Utils., 179 F.3d 258, 261 (5th Cir. 1999) ("'The starting point for interpreting a statute is the language of the statute itself.'" (citing Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S. Ct. 2051, 64 L. Ed. 2d 766 (1980)); City of Sherman v. Pub. Util. Comm'n, 643 S.W.2d 681, 684

---

Veeck's use cannot be saved by the merger doctrine. The majority would, however, hold harmless certain individuals quoting certain sections of the law for a particular purpose, such as "contractors who need to use building codes." It is difficult indeed to distinguish between this use and that of Veeck. It is beyond peradventure that Veeck posted the building codes on the internet site as a service to the general public, a class which may include contractors and home builders.

36

(Tex. 1983) ("Generally the intent and meaning [of the legislature] is obtained primarily from the language of the statute" (citing Magnolia Petroleum Co. v. Walker, 83 S.W.2d 929, 934 (Tex. 1935)).  The importance of examining the precise language of a statute in order to glean its meaning demonstrates the concrete, inflexible nature of a statute's language once it is enacted into law.  The same concept applies to an administrative regulation, such as a building code.  An individual attempting to gain access to the building code of Anna or Savoy, Texas has only one choice — it must view the enacted version of SBCCI's model code.  This is a case where the merger doctrine is especially appropriate because other methods of expressing the idea are foreclosed.  See Educ. Testing Servs. v. Katzman, 793 F.2d 1533, 1539 (3d Cir. 1986) (citing Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1253 (3d Cir. 1983)).  An individual wishing to publish the text of a law cannot develop his own, unique version and still publish an authoritative copy.

Moreover, it is antithetical to our nation's concept of public participation for a private entity to monopolize the public laws.  See generally Kepner-Tregoe, 12 F.3d at 533 (justifying the merger doctrine on the basis that no one should be given a monopoly over an idea).  Congress could not have intended for a private organization to be given the exclusive right to control others' ability to copy and distribute an enacted law.  Even the towns themselves apparently keep relevant portions of the SBCCI code as the official version.

I am not dissuaded from applying merger in this case by the Second Circuit's opinion in CCC Information Services.  That court did not discuss, with any detail, the issue of whether a copyrighted work would merge with its underlying idea when enacted into law.  Instead, the court was concerned with whether the ideas expressed in a compilation of informational matter were entitled to copyright

37

protection. Here, in contrast, our focus is on the adoption of the copyrighted work into law. I would agree with Veeck that once adopted, SBCCI's model code becomes a concrete fact that is outside the realm of copyrightable works under section 102(b) of the Copyright Act. See Feist, 499 U.S. at 356, 111 S. Ct. at 1293 (explaining that section 102(b) is "universally understood to prohibit any copyright in facts"). This same consideration convinces me that once SBCCI's code is enacted by reference into law, the "ideas" embodied in the law merge with SBCCI's original creation, causing the model code to lose its copyright protection.

SBCCI spends thousands of hours developing its codes, providing a valuable service to governments that choose to adopt the model codes as their own. The majority has embraced the arguments set forth by SBCCI that its economic future will be compromised if citizens, such as Veeck, are able to post copies of copyrighted codes on the internet. This argument lacks merit. As SBCCI itself points out, private citizens are already permitted to copy SBCCI's code from the municipality at City Hall. As such, citizens are able to avoid having to buy SBCCI's codes from the organizations by viewing a copy at a local government office or library. It is illogical for SBCCI to argue that its viability is threatened if a private individual is able to copy the law to share with others because these others could just as easily access the information from the local government without arousing SBCCI's protestation. The minute burden that might befall the standards-writing organizations because of the actions of Veeck and others like him is outweighed by the benefit of Veeck's act of enhancing unfettered access to the law.

Based on the foregoing discussion, I would hold that once a "model code" is adopted into law by the government, a private entity, such as SBCCI, may no longer assert a copyright over the law's

38

content, for the law enters the public domain and should be readily available for access by all citizens. Further, upon enactment, the law transforms into an "idea" that is no longer distinguishable from its expression, causing SBCCI's codes to lose their copyright protection. For these reasons, I would reverse the judgment of the district court.

I respectfully dissent from the majority's contrary conclusion.