**AMERICAN DENTAL ASSOCIATION,**
**Plaintiff–Appellant,**

v.

**DELTA DENTAL PLANS ASSOCI-**
**ATION, Defendant–Appellee.**

**No. 96–4140.**

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1997.

Decided Sept. 30, 1997.

Jack R. Bierig (argued), Henry L. Mason, III, Bryan A. Schneider, Sidley & Austin, Chicago, IL, Stephen F. Smith, Sidley & Austin, Washington, DC, Peter M. Sfikas, Tamra S. Kempf, Bell, Boyd & Lloyd, Chicago, IL, Clay H. Phillips, Peterson & Ross, Chicago, IL, for Plaintiff–Appellant.

Marshall M. Seeder, Andrew Hartman, Lisa J. Krasberg, Sachnoff & Weaver, Chicago, IL, Michael K. Plimack, Robert A. Rosenfeld (argued), Heller Ehrman White & McAuliffe, San Francisco, CA, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

This case presents the question whether a taxonomy is copyrightable. The American Dental Association has created the *Code on Dental Procedures and Nomenclature*. The first edition was published in 1969; the Code has been revised frequently since, in response to changes in dental knowledge and technology. All dental procedures are classified into groups; each procedure receives a number, a short description, and a long description. For example, number 04267 has been assigned to the short description "guided tissue regeneration—nonresorbable barrier, per site, per tooth (includes membrane removal)", which is classified with other surgical periodontic services. The Code made its first appearance in the *Journal of the American Dental Association*, covered by a general copyright notice; the 1991 and 1994 versions were submitted for copyright registration, which was granted by the Register of Copyrights. Delta Dental Association has published a work entitled *Universal Coding and Nomenclature* that includes most of the numbering system and short descriptions from the ADA's Code. In this suit for copyright infringement, Delta contends that it is entitled to reprint modified versions of the

Code under an express or implied license, as a joint author (Delta participated in the groups that drafted the Code), and as fair use. It contends that by distributing pamphlets containing some of the Code's older versions without copyright notices the ADA has forfeited its copyright. Delta also argues that the Code is not copyrightable subject matter, and the district court granted summary judgment in its favor on this ground without reaching Delta's other arguments.

The district court held that the Code cannot be copyrighted because it catalogs a field of knowledge—in other words, that no taxonomy may be copyrighted. A comprehensive treatment cannot be selective in scope or arrangement, the judge believed, and therefore cannot be original either. Taxonomies are designed to be useful. The judge wrote that if "nothing remains after the 'useful' is taken away—if the primary function is removed from the form—the work is devoid of even that modicum of creativity required for protection, and hence is uncopyrightable." 39 U.S.P.Q.2d 1714, 1721, Copyright L. Rep. ¶ 27,582 at 29,440 (1996) (footnote omitted). No one would read the ADA's Code for pleasure; it was designed and is used for business (for records of patients' dental history or making insurance claims) rather than aesthetic purposes. The district court added that, as the work of a committee, the Code could not be thought original. Creation by committee is an oxymoron, the judge wrote.

The sweep of the district court's reasoning attracted the attention of many other suppliers of taxonomies. The American Medical Association, the American National Standards Institute, Underwriters Laboratories, and several other groups have filed a brief as *amici curiae* to observe that they, too, produce catalogs of some field of knowledge and depend on the copyright laws to enable them to recover the costs of the endeavor. Other groups or firms might say the same. The manuals issued by the Financial Accounting Standards Board to specify generally accepted accounting practices could not be copyrighted. Nor could the tests and answers devised by the Educational Testing Service. The district court's reasoning logically removes copyright protection from the West Key Number System, which is designed as a comprehensive index to legal topics, and *A Uniform System of Citation* (the *Bluebook*), a taxonomy of legal sources. Very little computer software could receive a copyright if the district judge is correct: no one reads, for pleasure, the source or object code of the word processing program on which this opinion was written, or of the operating system that runs the computer: take away the "useful" elements and these endeavors are worthless. Worse, most commercial software these days is written by committee, and authors receive less public credit than the gaffers on a movie set, whose names at least scroll by at the end after the audience has turned its collective back to head up the aisles. Blueprints for large buildings (more committee work), instruction manuals for repairing automobiles, used car value guides, dictionaries, encyclopedias, maps—all these, and many more, would flunk the district court's test of originality. Yet these items are routinely copyrighted, and challenges to the validity of these copyrights are routinely rejected. E.g., *Educational Testing Services v. Katzman*, 793 F.2d 533 (3d Cir.1986) (Scholastic Aptitude Test); *CCC Information Services, Inc. v. Maclean Hunter Market Reports*, Inc., 44 F.3d 61 (2d Cir.1994) (list of used-car prices); *Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir.1995) (terms describing groups of animals). See also 17 U.S.C. § 101 (including "architectural plans" within the definition of "pictoral, graphic and sculptural works" that are copyrightable); Paul Goldstein, *Copyright: Principles, Law and Practice* § 2.15.2 (1989) (discussing copyright protection for computer programs). The American Medical Association's copyright in the *Physician's Current Procedural Terminology*, its catalog of medical procedures, was recently sustained, although against a challenge different from the district court's rationale. *Practice Management Information Corp. v. American Medical Association*, 121 F.3d 516 (9th Cir.1997) Maps and globes are not only copyrightable, see *Rockford Map Publishers, Inc. v. Directory Service Co.*, 768 F.2d 145 (7th Cir.1985), but also constituted two-thirds of the original scope of copyright. The Copyright Act of 1790 specified three protectable items: maps, charts, and books. Act of May 31, 1790, 1 Stat. 124. Like taxonomies, maps are valued

to the extent they offer useful organizations of facts; like the Code, maps are produced by committees. (As are opinions of appellate courts, which despite this handicap, and the judges' effort to produce something useful, might occasionally have a modicum of originality.)

■ Any original literary work may be copyrighted. The necessary degree of "originality" is low, and the work need not be aesthetically pleasing to be "literary." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345–46, 111 S.Ct. 1282, 1287–88, 113 L.Ed.2d 358 (1991). Term papers by college sophomores are as much within the domain of copyright as Saul Bellow's latest novel. See *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903). Scholarship that explicates important facts about the universe likewise is well within this domain. Einstein's articles laying out the special and general theories of relativity were original works even though many of the core equations, such as the famous E=mc2, express "facts" and therefore are not copyrightable. Einstein could have explained relativity in any of a hundred different ways; another physicist could expound the same principles differently.

■ So too with a taxonomy—of butterflies, legal citations, or dental procedures. Facts do not supply their own principles of organization. Classification is a creative endeavor. Butterflies may be grouped by their color, or the shape of their wings, or their feeding or breeding habits, or their habitats, or the attributes of their caterpillars, or the sequence of their DNA; each scheme of classification could be expressed in multiple ways. Dental procedures could be classified by complexity, or by the tools necessary to perform them, or by the parts of the mouth involved, or by the anesthesia employed, or in any of a dozen different ways. The Code's descriptions don't "merge with the facts" any more than a scientific description of butterfly attributes is part of a butterfly. Cf. *Nash v. CBS, Inc.*, 899 F.2d 1537 (7th Cir.1990) (discussing the fact-expression dichotomy). There can be multiple, and equally original, biographies of the same person's life, and multiple original taxonomies of a field of knowledge. Creativity marks the expression even after the fundamental scheme has been devised. This is clear enough for the long description of each procedure in the ADA's Code. The long description is part of the copyrighted work, and original long descriptions make the work as a whole copyrightable. But we think that even the short description and the number are original works of authorship.

Number 04267 reads "guided tissue regeneration—nonresorbable barrier, per site, per tooth" but could have read "regeneration of tissue, guided by nonresorbable barrier, one site and tooth per entry". Or "use of barrier to guide regeneration of tissue, without regard to the number of sites per tooth and whether or not the barrier is resorbable". The first variation is linguistic, the second substantive; in each case the decision to use the actual description is original to the ADA, not knuckling under to an order imposed on language by some "fact" about dental procedures. Blood is shed in the ADA's committees about which description is preferable. The number assigned to any one of the three descriptions could have had four or six digits rather than five; guided tissue regeneration could have been placed in the 2500 series rather than the 4200 series; again any of these choices is original to the author of a taxonomy, and another author could do things differently. Every number in the ADA's Code begins with zero, assuring a large supply of unused numbers for procedures to be devised or reclassified in the future; an author could have elected instead to leave wide gaps inside the sequence. A catalog that initially assigns 04266, 04267, 04268 to three procedures will over time depart substantively from one that initially assigns 42660, 42670, and 42680 to the same three procedures. So all three elements of the Code—numbers, short descriptions, and long descriptions, are copyrightable subject matter under 17 U.S.C. § 102(a). The *Maroon Book* and the *Bluebook* offer different taxonomies of legal citations; Wotquenne and Helm devised distinct catalogs of C.P.E. Bach's oeuvre; Delta Dental Association could have written its own classification of dental procedures.

■ Note that we do *not* conclude that the Code is a compilation covered by 17 U.S.C. § 103. It could be a compilation only if its elements existed independently and the ADA merely put them in order. A taxonomy is a way of *describing* items in a body of knowledge or practice; it is not a collection or compilation *of* bits and pieces of "reality". The 1991 and 1994 versions of the Code may be recompilations of earlier editions, but the original Code is covered by § 102(a) as an "original work of authorship", and its amendments by § 106(2) as derivative works.

The district court's contrary conclusion instantiates the adage that where you come out depends on where you go in. The court asked whether the Code would be copyrightable if it were a lamp. This is not quite as foolish as it sounds. Congress permits works of art, including sculptures, to be copyrighted, but does not extend the copyright to industrial design, which in the main falls into the province of patent, trademark, or trade dress law. See 17 U.S.C. §§ 101, 102(a)(5), 113; *W.T. Rogers Co. v. Keene*, 778 F.2d 334 (7th Cir.1985). When the maker of a lamp—or any other three-dimensional article that serves some utilitarian office—seeks to obtain a copyright for the item as a sculpture, it becomes necessary to determine whether its artistic and utilitarian aspects are separable. If yes, the artistic elements of the design may be copyrighted; if no, the designer must look outside copyright law for protection from imitation. Compare *Hart v. Dan Chase Taxidermy Supply Co.*, 86 F.3d 320 (2d Cir.1996), which holds that fish mannequins may be copyrighted if they possess artistic features separable from their utilitarian aspects, with *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411 (2d Cir. 1985), which holds that mannequins of human torsos may not be copyrighted. Judge Zagel applied to the ADA's Code the same approach courts use for three-dimensional articles, found that the Code has no expression separable from its utilitarian aspects, and held that it therefore may not be copyrighted.

Such an inquiry mixes two distinct issues: originality and functionality. A lamp may be entirely original, but if the novel elements are also functional the lamp cannot be copyrighted. This is not a line between intellectual property and the public domain; it is a line among bodies of intellectual-property law. An article with intertwined artistic and utilitarian ingredients may be eligible for a design patent, or the artistic elements may be trade dress protected by the Lanham Act or state law. Yet the district court did not set out to mark the boundaries among copyright, patent, trademark, and state law. Anyway, to restate the obvious, the Code is not a sculpture. The ADA does not make any claim to its protection as a "pictorial, graphic, [or] sculptural" work under § 102(a)(5), and the unique limitations on the protection of that category of works do not extend to the written word. Not only are the issues different—original is not an antonym for utilitarian—but the special question under § 102(a)(5) and § 113 is not one that should be extended. "Of the many fine lines that run through the Copyright Act, none is more troublesome than the line between protectible pictorial, graphic and sculptural works and unprotectible utilitarian elements of industrial design." Goldstein, § 2.5.3 at 99 (footnote omitted). Whether a literary work is original ought to be a question easy to pose and easy to answer, so that people know the status of their intellectual property; it ought not be complicated with a test designed for a completely different problem.

■ Delta asks us to affirm the judgment on a ground that the district judge did not reach: that the Code is not copyrightable because it is a "system." Section 102(b) tells us that copyright protection even of an original work does not cover "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." But what could it mean to call the Code a "system"? This taxonomy does not come with instructions for use, as if the Code were a recipe for a new dish. Cf. *Publications International, Ltd. v. Meredith Corp.*, 88 F.3d 473 (7th Cir.1996) (holding that recipes are not copyrightable). A dictionary cannot be called a "system" just because new novels are written using words, all of which appear in the dictionary. Nor is word-processing software a "system" just because it has a command structure for producing paragraphs. The Code is a taxonomy, which may

be put to many uses. These uses may be or include systems; the Code is not.

Section 102(b) codifies the fact-expression dichotomy, which we have already considered, as well as the holding of *Baker v. Selden*, 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879), that blank forms are not copyrightable, even if the structure of the forms captures the essence of an original work of literature. The book was protected as original literary expression, the Court held, but the form was a means of putting the book's ideas into practice—and copyright law, unlike patent law, covers only expression. Someone who buys a book full of ideas for new machines may build and sell one of the machines without infringing the author's copyright; *Baker* thought that the use of an accounting system described in a book is pretty much the same thing, even if practice of the system entails use of the author's forms. Baker rearranged Selden's forms, but if the original forms were copyrightable then the rearrangements were derivative works, which the original author had an exclusive right to produce. Protecting variations on the forms could have permitted the author of an influential accounting treatise to monopolize the practice of double-entry bookkeeping. Yet copyright law does not permit the author to monopolize the revenues to be derived from an improved system of accounting—or of reporting dental procedures. See William M. Landes & Richard A. Posner, *An Economic Analysis of Copyright Law*, 17 J. Legal Studies 325, 350–53 (1989).

Few "how-to" works are "systems" in *Baker's* sense. If they were, architectural blueprints could be freely copied, although the Berne Convention Implementation Act of 1988, Pub.L. 100–567, 102 Stat. 2854, adds protection for "architectural plans" to the statute. Descriptions of how to build or do something do not facilitate monopoly of the subject-matter being described, so the concern of *Baker* is not activated. Again consider blueprints: other architects can imitate the style of the completed building; they just can't copy the plans. What is more, a form that contains instructions for its completion is copyrightable in part (the instructions) and in the public domain in part (the lines and boxes). *Edwin K. Williams & Co. v. Edwin K. Williams & Co. East*, 542 F.2d 1053, 1061

(9th Cir.1976); Goldstein at § 2.15.1.b. So far as the ADA is concerned, any dentist, any insurer, anyone at all, may devise and use forms into which the Code's descriptions may be entered. The ADA encourages this use; standardization of language promotes interchange among professionals. (The fact that Delta used most of the Code but made modifications is the reason ADA objects, for variations salted through a convention impede communication.) Section 102(b) precludes the ADA from suing, for copyright infringement, a dentist whose office files record treatments using the Code's nomenclature. No field of practice has been or can be monopolized, given this constraint. Section 102(b) permits Delta to disseminate forms inviting dentists to use the ADA's Code when submitting bills to insurers. But it does not permit Delta to copy the Code itself, or make and distribute a derivative work based on the Code, any more than Baker could copy Selden's book.

Whether there are other obstacles to the relief the ADA seeks is a subject best left to the district court in the first instance. The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion. Any award of attorneys' fees, the second subject of the ADA's appeal, must abide the final decision in the litigation.