**Louis PSIHOYOS, Plaintiff,**

v.

**THE NATIONAL GEOGRAPHIC SOCIETY, Defendant.**

**No. 04 CIV. 4941(RMB).**

United States District Court, S.D. New York.

Aug. 3, 2005.

Andrew Berger, Tannenhaum, Helpern Syracuse & Hirschtritt LLP, New York, NY, for plaintiff.

Robert M. Callagy, Satterlee, Stephens, Burk & Burke LLP, New York, NY, for defendant.

### *ORDER*

BERMAN, District Judge.

## I. Introduction

Louis Psihoyos ("Plaintiff" or "Psihoyos") brings this action against The National Geographic Society ("Defendant" or "NGS") under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (*See* Complaint, filed June 23, 2004.) Psihoyos alleges that NGS infringed upon his copyrights in a photograph of a dinosaur fossil and an illustration of the dinosaurs in life, which appeared in Psihoyos' book, *Hunting Dinosaurs,* by "creat[ing] copies of the Fossil Photograph and drawing" and then "publishing the infringing copies on the same page of [the] March 2003 issue of [the National Geographic Magazine]." (*Id.* ¶ 3.)

On February 18, 2005, NGS moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (*See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment, dated February 18, 2005 ("Def. Mem.").) On March 21, 2005, Psihoyos opposed NGS' motion and cross-moved for summary judgment. (*See* Plaintiff's Memorandum of Law in Support of his Cross–Motion for Summary Judgment on Liability and in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem.").) NGS filed Defendant's Memorandum of Law in Opposition to Plaintiff's Cross–Motion for Summary Judgment on the Issue of Copy-

right Liability and In Further Support of Defendant's Motion for Summary Judgment ("Def. Opp.") on April 8, 2005, and Psihoyos filed Plaintiff's Reply Memorandum of Law in Support of his Cross–Motion for Summary Judgment on Liability ("Pl. Reply") on or about April 20, 2005.[1]

**For the reasons set forth below, Defendant's motion for summary Judgment is granted and Plaintiff's cross-motion for summary judgment is denied.**

## II. Background

NGS is a non-profit corporation which has published a monthly journal, the National Geographic Magazine ("Magazine"), since 1888. (*See* Defendant's Statement Pursuant to Local Rule 56.1, dated February 18, 2005 ("Def.'s 56.1"), ¶ 1.) From 1980 until approximately 1996, Psihoyos, a professional photographer and author, worked as a freelance photographer for NGS. (Def.'s 56.1 ¶ 2; Plaintiff's Statement Pursuant to Local Rule 56.1, dated March 21, 2005 ("Pl.'s 56.1"), ¶ 1.) In February 1991, Psihoyos and NGS contracted to have Psihoyos do freelance photography for NGS in connection with a planned NGS article on dinosaurs. (Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 2; Contract between NGS and Psihoyos, dated February 11, 1991 ("Contract"), Exhibit A to Declaration of Louis Psihoyos, March 16, 2005 ("Psihoyos Decl.").) In 1992, Psihoyos went to the Mongolian State Museum in Mongolia on behalf of NGS, where he photographed a "fossil of two dinosaurs, a carnivorous Velociraptor and herbivorous Protoceratops, that had been uncovered in 1971 in the southern Gobi desert in Mongolia ('the

Fossil')." (Def.'s 56.1 ¶ 6; *see also* Pl.'s 56.1 ¶ 3.) The two dinosaurs in the Fossil are "locked in mortal combat," and are sometimes referred to as the "Fighting Dinosaurs." (Pl.'s 56.1 ¶ 4.) In order to photograph the Fossil, Psihoyos built a display case, which he filled up to the level of the dinosaurs with sand taken from the Gobi desert "to match the color and texture of the matrix, [which is] the substance that bonds the bones of the Fossil to the rock." (*Id.* ¶¶ 6–9.) Psihoyos took the photograph at issue ("Psihoyos Photo") from an overhead position. (*Id.* ¶ 13.) The photograph, which is in color, shows the Fossil surrounded by sand; it does not show any part of the display case.

NGS did not publish the Psihoyos Photo and, pursuant to the Contract, returned it and all rights pertaining to it to Psihoyos. (Def.'s 56.1 ¶¶ 4–5; Pl.'s 56.1 ¶ 16; Contract ¶ 5(a).)

Psihoyos decided to publish the Psihoyos Photo in a book, *Hunting Dinosaurs*, and he commissioned Pat Redman ("Redman"), a scientific illustrator, to draw for the book an illustration of "the dinosaurs at the moment of death in the same perspective and position they appeared in the [Psihoyos Photo]" ("Redman Illustration"). (Pl.'s 56.1 ¶ 20; *see also* Def.'s 56.1 ¶¶ 11–14; Deposition Transcript of Louis Psihoyos, dated December 6, 2004 ("Psihoyos Dep."), at 120, Exhibit H to Affidavit of Robert M. Callagy, dated February 16, 2005 ("Callagy Aff.").)[2] In creating the Redman Illustration, Redman looked "through a number of different dinosaur books to see just how people would approach the same animals," including a 1991 book, *Dinosaurs: A Global View*, by Syl-

---

1. The parties waived oral argument.

2. Unless otherwise noted, all references to the Psihoyos Photo and its accompanying illustration ("Redman Illustration") are to the im-

ages as they appear on page 209 of the hardcover edition of *Hunting Dinosaurs*, which was published in 1994. *See* Louie Psihoyos, *Hunting Dinosaurs* 209 (1994).

via and Stephen Czerkas, which included an illustration by Mark Hallett ("Hallett") of the dinosaurs in the Fossil as they might have appeared in life ("Global View Illustration"). (*See* Deposition Transcript of Patrick D. Redman, dated December 6, 2004 ("Redman Dep."), at 19, Callagy Aff. Ex. G; Sylvia J. Czerkas & Stephen A. Czerkas, *Dinosaurs: A Global View* 184–85 (1991), Exhibit A to Affidavit of Mark Hallett, dated February 3, 2005 ("Hallet Aff.").) "I would look at [other illustrations, including the Global View Illustration] and just see how the artist had interpreted the animals, just to get some ideas for skin texture or—mostly just to avoid—well, to avoid copying anybody's stuff. I just wanted to make sure I wasn't doing anything that looked too much like anybody's work." (Redman Dep. at 24–25, Exhibit A to Declaration of Pat Redman, dated March 16, 2005 ("Redman Decl.").)

Psihoyos registered a copyright for *Hunting Dinosaurs* in 1995. (*See* United States Copyright Office website, dated September 20, 2005, Psihoyos Decl. Ex. M.) Redman transferred his copyright in the Redman Illustration to Psihoyos before the instant action was commenced. (Pl.'s 56.1 ¶ 44; Contract between Redman and Psihoyos, dated February 6, 2004, Psihoyos Decl. Ex L; *see also* Certificate of Registration, dated February 12, 2004, Psihoyos Decl. Ex. N; Certificate of Registration, dated March 22, 2005 ("March Registration"), attached to Letter from Andrew Berger to the Court, dated May 26, 2005.)

In 2000, Denis Finnin ("Finnin"), Director of Photography for the American Museum of Natural History ("Museum"), took a photograph of the Fossil in connection with a Museum exhibit ("Finnin Pho-

to"). (Def.'s 56.1 ¶ 20.) To create the Finnin Photo, Finnin placed his camera in a loft in the Museum's photography studio and took a photograph with the camera looking "directly down on the Fossil." (Pl.'s 56.1 ¶ 77 (internal quotation omitted); Def.'s 56.1 ¶ 21.) Because the Fossil's matrix had been damaged during transport to the Museum, sand had been added. (Pl.'s 56.1 ¶¶ 74–76.) Like the Psihoyos Photo, the Finnin Photo is in color and shows the Fossil surrounded by sand but does not show the Fossil's display case.[3]

Sometime during or before 2001, NGS decided to publish an article about dinosaur behavior, which was to include a photograph of the Fossil and an illustration of the dinosaurs. (*See* Def.'s 56.1 ¶ 23; Plaintiff's Statement Pursuant to Local Rule 56.1 in Opposition to Defendant's Motion for Summary Judgment, dated March 21, 2005, ¶ 23; Pl.'s 56.1 ¶ 67.) Because the Museum would not uncrate the Fossil due to it fragility, NGS was permitted to select for publication photographs of the Fossil from the Museum's own collection. (*See* Def.'s 56.1 ¶¶ 24–25.) The NGS illustrations editor assigned to the article "examined photos that . . . Finnin had created of the Fossil in [Finnin's] studio at the Museum and had . . . Finnin send to NGS [six] of his photos." (Pl.'s 56.1 ¶ 70.) NGS selected for publication an overhead shot of the Fossil taken by Finnin, *i.e.* the Finnin Photo. (*See* Def.'s 56.1 ¶ 26; Pl.'s 56.1 ¶ 72.) NGS commissioned Hallett, a "paleo artist," to prepare an illustration that would be a "flesh restoration of the two dinosaurs as they would have seemed just prior to their deaths," ("Hallett Illustration"). (Pl.'s 56.1 ¶¶ 85–87 (internal quotation omitted).) NGS provided Hal-

---

**3.** Unless otherwise noted, all references to the Finnin Photo and its accompanying illustration ("Hallett Illustration") are to the images as they appear on pages 26–27 of the March 2003 issue of the Magazine. *See* National Geographic Magazine, Vol. 203, No. 3, March 2003, at 26–27.

lett with a copy of the Finnin Photo and directed him to "match[ ] the skeletons' positioning." (Pl.'s 56.1 ¶ 88 (internal quotation omitted); *see also* Def.'s 56.1 ¶ 27.) In preparing the illustration, Hallett consulted "four visual sources as references/inspirations," including, among others, *Hunting Dinosaurs*. (Pl.'s 56.1 ¶ 92 (internal quotation omitted).) The Hallett Illustration shows the dinosaurs in the Fossil from an overhead perspective.

NGS published the (allegedly infringing) Finnin Photo and the Hallett Illustration on a two-page spread in an article about dinosaur behavior in the March 2003 issue of the Magazine. (*See* Def.'s 56.1 ¶ 29; Pl.'s 56.1 ¶ 116.)

### III. Legal Standard

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kerr v. New Yorker Magazine, Inc.*, 63 F.Supp.2d 320, 323 (S.D.N.Y.1999).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the non-moving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)); *accord Kaplan v. The Stock Market Photo Agency, Inc.*, 133 F.Supp.2d 317, 321 (S.D.N.Y.2001). The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Kaplan*, 133 F.Supp.2d at 321.

When cross-motions for summary judgment are made the standard is the same as that for individual motions for summary judgment. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001). Each motion must be considered independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party. *See id.*

### IV. Analysis

 To establish copyright infringement under Federal law, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir.1995) (internal quotation and emphasis omitted). Actual copying may be shown either by direct evidence or indirect evidence. *See Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir.1992). "Indirect copying may be shown by demonstrating that the defendant had access to the copyrighted work and that the similarities between the works are probative of copying." *The Procter & Gamble Co. v. Colgate–Palmolive Co.*, 199 F.3d 74, 77 (2d Cir.1999)

(citing *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir.1997)).

■ "In most cases, the test for 'substantial similarity' is the so-called 'ordinary observer test' [which asks] whether 'an average lay observer would [ ] recognize the alleged copy has having been appropriated from the copyrighted work.'" *Knitwaves*, 71 F.3d at 1002 (quoting *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 766 (2d Cir.1991)). When works contain both protectible and unprotectible elements, the Court applies the "more discerning ordinary observer test," in which the Court "must attempt to extract the unprotectible elements from . . . consideration and ask whether the protectible elements, standing alone, are substantially similar." *Knitwaves*, 71 F.3d at 1002 (emphasis omitted). "Th[e] 'discerning ordinary observer' inquiry entails not a piecemeal comparison of each of the protectible elements with its putative imitation, but rather a careful assessment of the 'total concept and feel' of the works at issue, after the non-protectible elements have been eliminated from consideration." *Silberstein v. Fox Entm't Group, Inc.*, No. 02 Civ. 1131, 2004 WL 1620895, at *10 (S.D.N.Y. July 19, 2004).

Under the merger doctrine, "'expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself.'" *Hart v. Dan Chase Taxidermy Supply Co.*, 86 F.3d 320, 322 (2d. Cir.1996) (quoting *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991)); *see* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . ."). The doctrine of *scenes a faire* holds that elements that "follow natu-

rally from the work's theme rather than from the author's creativity" are unprotectible. *Computer Assoc. Int'l v. Altai, Inc.*, 982 F.2d 693, 715 (2d Cir.1992) (internal quotation omitted).

"[S]ummary judgment may be appropriate 'either because the similarity between the two works concerns only '*non*-copyrightable' elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *Arica Instit., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir.1992) (citations omitted).

## A. Photograph

NGS argues, among other things: (i) that "nearly all of the similarity between the [p]hotographs is dictated by their common subject matter;" (ii) that there are "[d]isparities in coloring[,] depth and placement of shadowing;" and (iii) that "any protectible similarity is covered by the doctrines of merger and '*scenes a faire*.'" (Def. Mem. at 12–15.) NGS also argues that the Finnin photograph was independently created and that NGS is shielded by the "fair use" doctrine. (*Id.* at 15, 23.)

Psihoyos argues, among other things, that the perspective, lighting, layout, and color of the photographs are similar. (*See* Pl. Mem. at 16–17.) He contends "there can be no merger because there are boundless ways to depict the Fossil," and "the elements in the [Psihoyos] Photo are neither commonplace nor indispensable." (*Id.* at 18.)

The critical issue is whether the Psihoyos and Finnin Photos are substantially similar.[4] The Court finds they are not substantially similar as a matter of law.

---

4. NGS does not appear to dispute that Psihoyos has a valid copyright in the Psihoyos Photo, that NGS and the Museum had access

to *Hunting Dinosaurs*, or that there is probative similarity between the photographs. (*See* Defendant's Statement Pursuant to Local

■ A copyright in a photograph derives from "the photographer's original conception of his subject, not the subject itself." *Kisch v. Ammirati & Puris Inc.*, 657 F.Supp. 380, 382 (S.D.N.Y.1987) (internal quotations omitted). To the extent a photograph captures the characteristics of an object as it occurs in nature, these characteristics are not protectible. *See* Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[B][2][b] (2005) (*"Nimmer"*) ("Liability ... cannot arise to the extent that the similarity between plaintiff's and defendant's work is that both graphically reproduce an object exactly as it occurs in nature.") (citing, among other cases, *First Am. Artificial Flowers v. Joseph Markovits Inc.*, 342 F.Supp. 178, 186 (S.D.N.Y.1972) ("[A]ny two devices purporting to represent a natural prototype or archetype are likely to be similar, quite apart from copying. Thus, a copyright on a work which bears practically a photographic likeness to the natural article, as here, is likely to prove a relatively weak copyright.")). "Protectible elements [of a photograph] 'may include posing the subjects, lighting, angle, selection of film and camera, [and] evoking the

desired expression,' along with other variants." *Kaplan*, 133 F.Supp.2d at 323 (quoting *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992)).[5]

■ In both the Psihoyos and Finnin Photos, the Fossil is laying in a bed of sand.[6] Because the Fossil was found in the desert sand and the matrix is made of sand (or sandstone), the use of sand by Psihoyos merges with the "idea" of showing the Fossil in its "natural setting."[7] *See Hart*, 86 F.3d at 322. The sand is also *scene a faire* because it is the obvious choice of background for the Fossil. *See Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir.1996) (finding that "[w]hile both the *Dinosaur World* books and the *Jurassic Park* works share a setting of a dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers, these settings are classic *scenes a faire* that flow from the uncopyrightable concept of a dinosaur zoo park."); *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980) ("[W]here the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is

Rule 56.1 in Opposition to Plaintiff's Cross–Motion for Summary Judgment, dated April 5, 2005, ¶¶ 50–61; Def. Mem. at 11–16; Def. Opp. at 3–5.)

**5.** *See also Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60, 4 S.Ct. 279, 28 L.Ed. 349 (1884) ("arranging the subject," "arranging and disposing of light and shade"); *Gross v. Seligman*, 212 F. 930, 931 (2d Cir.1914) (background, "pose, light, and shade"); *Andersson v. Sony Corp. of Am.*, No. 96 Civ. 7975, 1997 WL 226310, at *2 (S.D.N.Y. May 2, 1997) ("lighting, shading, positioning and timing"); *Kisch*, 657 F.Supp. at 382 (same) (citing *Pagano v. Charles Beseler Co.*, 234 F. 963, 963 (S.D.N.Y.1916)).

**6.** There are some differences (*e.g.*, the color, the granulation) between the sand in each photograph.

**7.** Psihoyos argues that the Psihoyos Photo expresses the "idea" of the Fossil in its "natural setting." (*See* Pl. Mem. at 15 ("The [Psihoyos] Photo and the Finnin Photo each show the dinosaurs emerging from their burial millions of years ago in the sandstone.... [Each photograph] furthered the impression that the Fossil was still in its natural surroundings by composing their photos so that no portion of the display case or box was visible."); Psihoyos Dep. at 97 ("**[W]hat I brought to the equation was, I made it look like it was back in the desert covered by sand.**") (emphasis added); Psihoyos Decl. ¶¶ 9, 23.) *See Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir.1976); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930).

not proof· of unlawful copying.") *Kaplan,* 133 F.Supp.2d at 322–23 ("[S]imilarities in expression between the two photographs are unprotectable elements or themes that flow predictably from the underlying subject matter.").

■ The overhead angle or perspective of the photographs appears to be similar. But the angle or perspective merges with the idea of showing the Fossil in its natural setting. *See Kaplan,* 133 F.Supp.2d at 324–25 (in comparing photographs, finding that the "angle or viewpoint . . . of the businessperson looking down at the street below" and positioning of the subject standing on a ledge of a tall building are "essential to the [idea of a] businessperson's contemplation of a suicide leap" and holding these elements unprotectible); *see also Durham,* 630 F.2d at 913. An examination of photographs ·of the Fossil taken from different angles shows that there are very few angles from which the Fossil may be photographed while at the same time depicting its natural surroundings. (*See* Psihoyos Dep. at 97 ("[W]hat I brought to the equation was, I made it look like it was back in the desert covered by sand.") (emphasis added).) (*See* Psihoyos Decl. Ex. B (side-view photograph); Exhibit 10 to Declaration of Andrew Berger, dated March 18, 2005 ("Berger Decl.") (printout of Google search showing several side-view photographs); Exhibit B to Reply Declaration of Andrew Berger, dated April 18, 2005 ("Berger Reply Decl.")

(same); Callagy Aff. Ex. M (side-view photographs); Affidavit of Denis Finnin, dated August 10, 2004 ("Finnin Aff."), Exs. A,· F, & G (same).) [8] Affording Psihoyos copyright protection of the overhead angle of the Fossil would, inappropriately, afford protection to the idea of showing the Fossil in its natural setting. *See Durham,* 630 F.2d at 913; *Kaplan,* 133 F.Supp.2d at 324–25.

The overhead angle flows naturally from the subject matter of the photograph. *See Oriental Art Printing, Inc. v. Goldstar Printing Corp.,* 175 F.Supp.2d 542, 548 & n. 3 (S.D.N.Y.2001) ("each of the potentially protectable elements, i.e. the photographs' lighting, angle, and the choice of plate, flow necessarily from the subject matter of the photographs, i.e. the realistic depiction of the most common Chinese food dishes"). Side-views of the Fossil are confusing, but the dinosaurs' skeletons and positioning are readily apparent from overhead. (*See* Psihoyos Decl. Ex. B; Berger Decl. Ex. 10; Berger Reply Decl. Ex. B; Callagy Aff. Ex. M; Finnin Aff. Exs. A, F, & G; *see also* Psihoyos Dep. at 96 ("[T]he overhead was, for me, the money shot."); Deposition Transcript of Denis Finnin, dated November 1, 2004, at 14, Callagy Aff. Ex. L ("[I]t's pretty clear with this fossil that looking down on it is probably the best way to photograph [because it is] the easiest way to show what these things [*i.e.* the dinosaurs] were actually doing.").)

---

8. (*See also* Pl. Reply. at 3–4 ("[C]reating the illusion that the Fossil was in its natural setting required both photographers to engage in a similar means of expression. Long before either Mr. Psihoyos or Mr. Finnin photographed the Fossil, it had been removed from the desert. Each photographer . . . put the Fossil back in that setting by smoothing out the matrix with additional sand, photographing it from above and ensuring that no part of the display case appeared in the photograph.") (emphasis added); Pl. Mem. at 15 ("Messrs. Psihoyos and Finnin each furthered the impression that the Fossil was still in its natural surroundings by composing their photos so that no portion of the display case ·or box ·was visible."); Def. Mem. at 14 ("[T]he fact that this Fossil is physically attached to its matrix means that the only way to obscure its packaging—and deliver the impression that the Fossil is in an outdoor setting—would be some kind of overhead angle.").)

In addition, there are few similarities but significant differences among the (limited number of) protectible elements in the photographs. *See Kaplan,* 133 F.Supp.2d at 326 (finding that "the differences between [the two photographs] far outweigh the similarities, quantitatively and qualitatively, such that no reasonable jury could find that the two work are substantially similar.") (citing *Rogers,* 960 F.2d at 308).

*Color*

■ To the extent that color is protectible, the two photographs are significantly different.[9] *See Boisson v. Banian, Ltd.,* 273 F.3d 262, 271 (2d Cir.2001) ("[E]ven though a particular color is not copyrightable, the author's choice in incorporating color with other elements may be copyrighted."). For example, in the Psihoyos Photo, both the bones of the Fossil and the sand are a light yellowish-brown or khaki color. In the Finnin Photo, the bones of the Fossil appear to be a bleached white color, and the sand is a cocoa color. Further, the color of the sand is not protectible under the doctrines of merger and/or *scene a faire* because Psihoyos chose the sand to match the color of the matrix. *See Kaplan,* 133 F.Supp.2d at 322–25. (*See* Pl.'s 56.1 ¶ 8 (Psihoyos "found some available Gobi sand at the Mongolian Museum and strained it to match the color and texture of the matrix, the substance that bonds the bones of the Fossil to the rock.").)

*Shadows*

■ The shadows in the two photographs are significantly different. For example, in the Psihoyos Photo: (i) there is a deep black shadow which runs along the vertibrae of the velociraptor; (ii) the velociraptor's head appears to be on top of a mound of sand, and the head and a portion of the neck cast a shadow; and (iii) the front portion of the protoceratops casts a shadow to its left side (from the protoceratops' perspective). These shadows do not appear in the Finnin Photo. *See Kaplan,* 133 F.Supp.2d at 323–28 (holding that "nearly all of the similarities between the works arise from noncopyrightable elements, thus rendering the works not substantially similar."); *see also Williams,* 84 F.3d at 589 (upholding summary judgment where "nearly all the similarities between the works arise from noncopyrightable elements"); *Well–Made Toy Mfg. Corp. v. Goffa Int'l Corp.,* 210 F.Supp.2d 147, 163 (E.D.N.Y.2002) ("Differences become particularly important where copyright protection is 'thin.' ").[10]

**B. Illustration**

NGS argues that the Redman and Hallett Illustrations are not substantially similar because, among other things: (i) the "style and subject matter make infringement difficult to establish because realistic depictions of natural objects are especially unlikely to be infringed by anything but close copying;" (ii) "once the elements of the Photographs from which these Illus-

---

9. The parties dispute whether the color of the photographs is similar. (*See* Pl. Mem. at 16; Def. Opp. at 4.) *See Walker v. Time Life Films, Inc.,* 615 F.Supp. 430, 434 (S.D.N.Y.1985) ("In determining copyright infringement, the works themselves supersede and control contrary allegations and conclusions, or descriptions of the works ....").

10. Having found that the photographs are not substantially similar, the Court need not ad-

dress NGS' defenses of independent creation and fair use. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 144 (2d Cir.1998) ("secondary users need invoke the fair use defense *only* where there is substantial similarity between the original and allegedly infringing works, and thus actionable copying"); *Knitwaves,* 71 F.3d at 1002 (substantial similarity necessary to prove copyright infringement).

trations derive are subtracted—elements including the alignment and angles of the creatures' bodies and the point of view chosen by the photographers—the Illustrations' other elements such as the addition of flesh to bone necessarily merge with the idea of lifelike dinosaurs based on images of their fossilized remnants," and "the angle is further necessitated by the unprotectible idea of depicting the Fossil as displayed in each of the underlying Photographs;" and (iii) there are several differences between the illustrations, and any similarities are *"de minimus."* (Def. Mem. at 16–19; Def. Opp. at 6 & n. 3.) NGS also argues that certain elements in the Redman Illustration were, in turn, copied from an earlier illustration, the Global View Illustration, and that Psihoyos "misrepresented the [Redman] [I]llustration in his copyright registration application." (Def. Mem. at 16, 20; Def. Opp. at 5.)

Psihoyos argues that the protectible elements of the Redman Illustration are similar to those in the Hallett Illustration, including, among other things, the perspective, "light source," "outlines of the Protoceratops," and "the angles of the tails of the velociraptors and protoceratops . . . ." (Pl. Mem. at 18–20; Pl. Reply at 6.) He contends that "there is nothing scientific about a dinosaur drawing" and so the illustrations need not necessarily be alike. (Pl. Mem. at 20.)

■ Assuming, *arguendo*, that Psihoyos has a valid copyright in the Redman Illustration, the Court finds that the Redman and Hallett Illustrations are not substantially similar as a matter of law.[11]

■ Only the original elements of a derivative work, *i.e.* the non-trivial additional matter transforming a prior work, are protected by copyright. *See, e.g., Durham*, 630 F.2d at 909 ("[T]he only aspects of [the derivative works] entitled to copyright protection are the non-trivial, original features, if any, contributed by the author or creator of these derivative works."); *see also* 17 U.S.C. § 103(b) ("The copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work . . . ."). The Redman Illustration is a derivative work based upon the Psihoyos Photo. (*See* March Registration ("Claimant's original application inadvertently omitted to mention that 'Fighting Dinosaurs' is a derivative work based on a pre-existing work: a photograph of a fossil created by claimant. . . . Additional material added to the pre-existing work includes an artistic color three-dimensional rendering of the fossil and the background on which it was found.").) The perspective and angle of the Redman Illustration, as well as the positioning of the dinosaurs, are derived from the Psihoyos Photo and, therefore, are not protected by copyright. *See Durham*, 630 F.2d at 909. (*See* Pl.'s 56.1 ¶ 20 (Psihoyos instructed Redman "to draw the dinosaurs at the moment of death in the same perspective and position they appeared in the [Psihoyos Photo].").)[12] Also, the addition of flesh on the Fossil to show the dinosaurs as they may have looked in life is not protected under the merger doctrine. *See Hart*, 86 F.3d at 322.

---

11. NGS does not appear to dispute that it had access to the Redman Illustration or that there is a probative similarity between the Redman and Hallett Illustrations. (*See* Def. Mem. at 16–22; Def. Opp. 5–7.)

12. Any claim that the Hallett Illustration infringes upon the copyright in the Psihoyos Photo cannot be sustained. *See Well–Made Toy*, 210 F.Supp.2d at 164–65, 167–68.

Redman conceded that he referenced the Global View Illustration in connection with creating the Redman Illustration. (*See* Redman Dep. at 19, 24–25.) The sagittal ridges which appear on the protoceratops and the open mouth and countershading appearing on the velociraptor—which are not apparent from the Fossil itself—appeared first in the Global View Illustration. These elements are not protectible because (NGS has shown) Redman copied them from the Global View Illustration. *See Leddel Int'l v. Eugene Biro Corp.*, No. 94 Civ. 7078, 1994 WL 695743, at \*4 (S.D.N.Y. Dec.12, 1994) ("[A] defendant can prove copying if he can show that the plaintiff had access to another's creation, and that the works are similar enough to support an inference that copying occurred."); *Nimmer* § 12.11[B] ("Proof that the plaintiff copied from prior works should involve the same elements as are required to establish copying by the defendant from the plaintiff, *i.e.* access and probative similarity.") (citing cases); *see also Boisson*, 273 F.3d at 269–70 (leaving open the question of whether "a defendant may also rely on circumstantial evidence to show that a plaintiff copied from the public domain," but applying that analysis, *arguendo*, to single element of plaintiff's work). Even if the protoceratops' sagittal ridges and the velociraptors' open mouths and countershading were protectible elements, these similarities would be insufficient to change the finding that the two works have a substantially different "concept and feel." *See Kerr*, 63 F.Supp.2d at 325–26. (*See* Redman Dep. at 28 ("[The Hallett Illustration] just doesn't look like my style.").) [13]

There are several significant differences between the dinosaurs in the Redman and Hallett Illustrations. *See Durham*, 630 F.2d at 913 (while key in evaluating substantial similarity is similarities between works, "numerous differences tend to undercut substantial similarity"). First, the position of the eyes and nostrils on the protoceratops are different. Second, the frill (or extension of bone on the back of the skull) in the Hallett Illustration has ridges that radiate out from two ovals located on either side of the central sagittal ridge, while the Redman Illustration does not. Third, the Hallett Illustration shows two legs on the right side of the protoceratops' body (from its perspective), while the Redman Illustration shows only one leg. Fourth, the protoceratops in the Redman Illustration has a lime green tail and leg, and the head is light orange with blue along the sagittal ridges, around the eyes, and near the beak. There is also a line of blue between the eyes and the beak and on the frill. The body is orange with white stripes, in which there are black or dark brown wiggly lines. The same dinosaur in the Hallett Illustration is black, ochre, and white and lacks colored patterns on its head. Fifth, the velociraptor in the Redman Illustration has skin, a white underbelly, a yellow mouth showing the dinosaur's top teeth, and a back that is green and reddish-orange. The same dinosaur in the Hallett Illustration has feathers, is black, ochre, and white, shows its top and bottom teeth, and appears to have a striated tail. Sixth, the velociraptors' feet or claws are not similar.

The drawing styles of the Redman and Hallett Illustrations are significantly different. The Redman Illustration is drawn in a detailed style, using a variety of bright colors, including, among others, yellow, lime green, orange, and blue. The Hallett

---

**13.** There are additional (inconsequential) similarities between the works; both protoceratops have a highlight down the center of their beaks and appear to have striated bodies and spots on the head(s) and legs.

Illustration, on the other hand, is a simpler, less realistic style "using red ochre and black grease pencils." (*See* Deposition Transcript of Mark Hallett, dated December 8, 2004, at 102–03, Callagy Aff. Ex. K.) And, the dinosaurs in the Redman Illustration are shown against a background of and cast shadows on sand (and part of the velociraptor's tail is covered by sand), which help to give the illustration a sense of depth and dimension. Because the Hallett Illustration is superimposed against the Finnin Photo, it has no background, resulting in an image that shows few shadows and looks relatively flat. *See Kerr*, 63 F.Supp.2d at 325–26 ("Kerr's pen and ink drawing has a sketchy, edgy feel to it, while Kunz's cool colors and smooth lines gives a more serene and thoughtful impression. These different 'feels' are sufficient support for a finding that the two images are not substantially similar.").[14]

## C. Layout

Psihoyos appears to claim that NGS has infringed upon his copyright(s) by arranging the Finnin Photo and Hallet Illustration in a manner similar to the layout of the Psihoyos Photo and Redman Illustration on page 209 of *Hunting Dinosaurs* ("*Hunting Dinosaurs* Layout"). (*See* Pl. Mem. at 16, 22; Pl. Reply at 8.) NGS argues that Psihoyos "cannot even demonstrate similar page layout" and "[s]pace constraints alone establish only a few options in displaying a before-and-after view of the Fossil." (Def. Opp. at 8.)

■ Assuming, *arguendo*, that the *Hunting Dinosaurs* Layout was sufficiently original to warrant copyright protection, *see Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 674, 682–83 (2d Cir.1998), the Court finds that the selection, coordination, and arrangement of elements in the *Hunting Dinosaurs* Layout are not substantially similar to the layout of pages 26 and 27 of the March 2003 issue of the Magazine ("Magazine Layout"), in which the Finnin Photo and Hallett Illustration appear.

"A 'compilation' is a work formed by the collection and assembling of preexisting materials ... that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. "Compilations are copyrightable, but the copyright 'extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work.'" *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 698 (2d Cir.1998) (quoting 17 U.S.C. § 103).

The selection of a photograph of the Fossil, *i.e.* the Psihoyos Photo, and an illustration showing a flesh restoration of the dinosaurs, *i.e.* the Redman Illustration, on the same page in *Hunting Dinosaurs* merges with the idea of showing a "before and after" view. *See Hart*, 86 F.3d at 322. And, while the Redman and Hallett Illustrations both are positioned above and diagonal to the Psihoyos and Finnin Photos in the *Hunting Dinosaurs* Layout and the Magazine Layout, the two layouts are otherwise very different. The significant differences include, among others, the following: (i) the Finnin Photo is oriented 90 degrees clockwise from the Psihoyos Photo (and the Redman and Hallett Illustrations share the same different orientation); (ii) the Psihoyos Photo is approximately one quarter of the size of the page, while the Finnin Photo fills a full page and a half as a spread; (iii) the Redman Illustration is the same size as the Psihoyos Photo, while

---

14. Having found the illustrations not substantially similar, the Court need not address NGS' defense of fair use. *See Castle Rock Entm't*, 150 F.3d at 144.

the Hallett Illustration is much smaller than the Finnin Photo; (iv) the Hallett Illustration is superimposed in the upper-right-hand portion of the Finnin Photo, while the Redman Illustration has its own space in the upper-left-hand portion of the *Hunting Dinosaurs* Layout; (v) the Finnin Photo and Hallett Illustration have no border, while the Psihoyos Photo and Redman Illustration are surrounded by thick white borders; and (vi) the captions are entirely dissimilar and located in different places. *See, e.g., Kregos v. Associated Press*, 3 F.3d 656, 663–64 (2d Cir.1993).

## V. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [11] is granted and Plaintiff's cross-motion for summary judgment [18] is denied. The Clerk of the Court is respectfully requested to close this case.